ORIGINAL

FILED
U.S. DISTRICT COURT
AU___ DIV.

2004 DEC 22 PM 3: 57

CLE___ J. ___
SO. DIST. OF GA.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### AUGUSTA DIVISION

| | |
|---|---|
| HERSCHEL A. ADAIR; AUBURN P. ADAMS; MARVIN F. ADAMS; HERMAN C. ALLEN; BETTY J. BATTEN; VAN V. BENTON; CHLOE L. S. BICKFORD; SARAH ANITA BELL BLACK, beneficiary of WILLIAM L. BLACK, deceased; WILLIAM B. BOWLING; CARLTON T. BRACEWELL; WILLIE R. BROCK; VIRGINIA J. BRYANT; OLIVER H. BUNTON, JR.; GRAYDON C. BURKS; WYNELLE F. CAMPBELL; CLOMMIE G. CARLTON; SUE W. CARSWELL; EUGENE CARVER; HELEN CHAMBERS, beneficiary of HERBERT B. CHAMBERS, deceased; VELMA CHAMBERS, beneficiary of RAY O. CHAMBERS, deceased; ROY J. CHARLES, through CHERYL C. HAMPTON, POA; FRANCES C. CHRISTIAN; EMMETT S. CLANTON, JR.; KAREN L. GRINER, beneficiary of ROBERT E. CLAY, deceased; HOWARD F. CLEMONS; JAMES S. COBB; JAMES H. COILE; VERDIE B. COLEMAN, beneficiary of, RAYMOND H. COLEMAN, deceased; CLAUDE CRAVEY; WILLIE G. CRUMMEY; SIDNEY DE LA ROSA; WILLIAM L. DONALDSON, SR.; TOM W. DOOLEY; CHRISTINE H. FLOWERS; JAMES L. FLOWERS; WILLIAM T. FOREHAND; AMELDA S. FREEMAN; JEAN C. FULLER; WAYNE A.GAY; FRANCES E. MCMICHAEL GIBSON; HERMAN A. GIEGER; WILLIAM E. GILL; JAMES W. GINN; HOWARD R. GRIFFIN; JOSEPH P. GRIFFIN; MARGUERITE G. GRIFFIN; MARTHA H. GRIMES, beneficiary of ROLLIN T. GRIMES, deceased; ELMER J. GRINER; JAMES A. GUNNELLS; LOUIE E. GURLEY; BOB A. HALE; CHARLIE H. HARRELL; LERAGEE C. HARRIS; FRED R. HART; FRED R. HAYMONS, SR.; JACK D. HERRING; | CIVIL ACTION FILE NO. CV104-192 |

*1*

GEORGE C. HESTER; HERMAN M. )
HILTON; BOBBY E. HUGHES; )
EUGENE T. HUMPHREY; ELIJAH )
HURSEY; EDWARD E. INFINGER; )
CHARLIE J. JACKSON; GERALD W. )
JONES; HENRY R. JONES; JAMES )
M. JONES; MOZELLE T. JONES; )
MELVIN V. JORDAN; ROBERT F. )
JOWERS; NOLAN R. KENT; BOBBY B. )
KINCAID; KATHRYN L. LIPE; LEROY F. )
LITTLE; COLEMAN LOVETT; )
WILBURN J. LUKE; NEAL R. LUMPKIN; )
GRADY E. LUTES; REED MAXWELL; )
PANSY H. MCGOWEN; GRADY F. )
MICHAEL; HAROLD E. MOORE; BETTY )
A. CUSHMAN, beneficiary of CHARLES E.)
MORRIS, deceased; JOHN C. MORRIS, )
SR.; BETTY J. MOSS, beneficiary of )
JAMES H. MOSS, deceased; JOSEPH B. )
PARKER, JR.; EUPHRATES A. PATE; )
WALTER W. PIERCE; JOE J. PRESTON, )
JR.; BILLY D. PRICE; CLEON B. PRICE; )
SARAH A. B. PROTHRO; JOEDY D. )
PUTNAL; STAFFORD H. PUTNAL; )
WILLIE L. PYE; HAROLD G. RAMSEY; )
JOANN J. REIS, beneficiary of CHARLES )
P. REIS, deceased; TRESTON E. )
RICHARDSON; ROBERT F. RITCH; )
CLAUDE B. ROGERS; HENRY F. )
SMITH; RAY A. SMITH; FAYE D. )
SPENCER, beneficiary of JOHN D. )
SPENCER, deceased; OLIN STEPHENS; )
ROBERT E. STONE; NELLIE F. )
STUCKEY, beneficiary of CHARLES W. )
STUCKEY, deceased; WILLIAM L. )
SWEAT; MARY SWEATH, beneficiary of )
WALTER M. SWEATH, deceased; )
GORDON B. TAFFAR; JACQUELINE )
THOMASON; CLIFFORD THOMPSON; )
JULIUS E. THOMPSON; BOBBIE S. )
TONEY; JESSE L. WAINWRIGHT; )
ELIZABETH P. WALL; ROBERT G. )
WARD, JR. RUNELLE C. WARREN; )
ARTHUR R. WASHINGTON; CHARLES )
L. WATERS; ROY WATSON; JOHN D. )
WEATHERLY; JEWEL M. WHITE; JOHN )
D. WHITMIRE; JACK K. WILKERSON; )

JAMES M. WILLIAMS; JAMES W.          )
WILLIAMS; ROBERT D. WILLIAMS;        )
ENNIS WILLIFORD, JR.; and            )
EDMOND C. YARBROUGH, SR.;            )
                                     )
     Plaintiffs                    )
                                     )
v.                                   )
                                     )
AMERICAN GENERAL LIFE AND            )
ACCIDENT INSURANCE COMPANY,          )
                                     )
     Defendant.                    )

## COMPLAINT

COME NOW Plaintiffs, through counsel, and show the Court the following:

### JURISDICTION AND VENUE

1.

This action involves benefits governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*

2.

This Court has jurisdiction over the case pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e).

3.

Defendant American General Life and Accident Insurance Company ("American General") is a corporation organized under the laws of the State of Tennessee. It has offices and transacts business in the Southern District of Georgia. It is subject to the jurisdiction of this Court.

4.

Venue is proper in the Augusta Division of the Southern District of Georgia because American General has offices and transacts business within the division and district and, thus, may be "found" there within the meaning of 29 U.S.C. § 1132(e)(2). Venue is also proper in the Augusta

Division of the Southern District of Georgia because many of the breaches of fiduciary duty at issue in this case occurred within said division and district.

5.

All of the Plaintiffs reside in Georgia. Many of the Plaintiffs reside in the Southern District of Georgia.

## TOLLING OF THE LIMITATIONS PERIOD

6.

This action involves American General's termination of post-retirement life insurance coverage for retired former employees of the Independent Life Accident & Insurance Company ("Independent Life"). A class action lawsuit was filed on behalf of all persons, including Plaintiffs, who were affected by American General's termination of this coverage. The class action was filed in the Superior Court of Richmond County, Georgia on December 29, 2000, and was removed to the United States District Court for the Southern District of Georgia on January 9, 2001. The class action is styled *Gerald W. Jones et. al., individually and on behalf of a class of all others similarly situated, v. American General Life & Accident Insurance Company* (the "*Jones* case"). The case number for the *Jones* case is CV101-003.

7.

The statute of limitations applicable to Plaintiffs' claims in this case was tolled by the filing the *Jones* case.

## GENERAL ALLEGATIONS

8.

The Independent Life is an insurance company that was organized under the laws of the state of Florida and headquartered in Jacksonville, Florida.

9.

Independent Life established a group insurance plan (the "plan") which provided qualified employees and retirees with various types of insurance coverage, including life insurance coverage. The plan was established to reward employees for their service and dedication to the company and to attract and retain a skilled, experienced work force.

10.

Plaintiffs are retired former employees of Independent Life who participated in the plan, persons with power of attorney over such employees, or persons who were named by such employees as the beneficiary of the group life insurance coverage provided under the plan.

11.

Independent Life advised its employees, including Plaintiffs, that employees who stayed with the company until retirement would be able to keep their group life insurance coverage and that the company would maintain that coverage at company expense for the rest of their lives. This advice was communicated to Independent Life's employees by Independent Life's human resources and employee benefits departments and by managers at the district level. The employees who dispensed this advice did not warn employees that Independent Life reserved the right to terminate the coverage or direct employees to consult portions of the plan's summary plan descriptions ("SPDs") which dealt with termination of the plan or the benefits provided thereunder.

12.

Independent Life merged with, and into, American General in 1996.

13.

American General assumed all of Independent Life's assets and liabilities in the merger (hereafter "the merger").

14.

American General provided employer-paid group life insurance coverage to retired former Independent Life employees from 1996 until December 31, 2000.

15.

Following the merger, employees in Independent Life's human resources and employee benefits departments continued to advise Independent Life's employees and retirees that the group life insurance coverage provided under the plan would be maintained for life at company expense upon retirement without warning that Independent Life reserved the right to terminate said coverage or directing employees and retirees to consult the portions of the SPDs relating to the terminability of said coverage.

16.

By 1997, American General had begun considering terminating or decreasing the post-retirement life insurance coverage provided under the plan.

17.

On December 8, 1998, American General decided to terminate the post-retirement life insurance coverage provided under the plan.

18.

A number of Plaintiffs inquired about their group life insurance coverage with American General and Towers Perrin following the merger.

19.

At no time between the merger in 1996 and December 8, 1998, when American General decided to terminate Plaintiffs' post-retirement life insurance coverage, did American General inform Plaintiffs who inquired about their group life insurance coverage that it was considering terminating their coverage.

20.

In October, 2000, American General mailed a letter dated September 30, 2000 to plan participants informing them that it was terminating their post-retirement group life insurance coverage effective January 1, 2001.

21.

At no time between December 8, 1998, when American General decided to terminate Plaintiffs' group life insurance coverage, and October, 2000, when American General announced that it was terminating said coverage, did American General inform Plaintiffs who inquired about their group life insurance coverage that it had decided to terminate their coverage.

22.

Following the merger, American General hired a benefits consulting firm ("Towers Perrin") to administer its employee benefits plans, including the plan for Independent Life's employees and retirees.

23.

Towers Perrin responded to inquiries from plan participants via form letters approved for use by American General.

24.

During 1997 and 1998, Towers Perrin mailed letters to over one hundred and ninety plan participants stating that their group life insurance coverage would remain in effect for their lifetime (hereafter "lifetime benefit letters"). These letters did not state that Independent Life or American General reserved the right to terminate plan participants' group life insurance coverage or direct plan participants to consult portions of the SPDs which American General contends entitle it to terminate said coverage.

25.

Towers Perrin submitted a form lifetime benefit letter to American General for approval before mailing the lifetime benefit letters to plan participants.

26.

American General contends that the lifetime benefit letters were sent by mistake and that "correction" letters were mailed to plan participants who were issued lifetime benefit letters.

27.

The correction letters did not state that the lifetime benefit letters were a mistake.

28.

The correction letters did not state that the group life insurance coverage of persons who had received a lifetime benefit letter would not remain in effect for their lifetime as stated in the lifetime benefit letters.

29.

Age and health are two of the primary factors considered by insurers in determining whether to issue a life insurance policy and the premiums to be paid for such a policy.

30.

A number of Plaintiffs have been unable to obtain or afford life insurance coverage to replace the group life insurance coverage that was canceled by American General effective January 1, 2001.

31.

Plaintiffs were more likely to have been able to obtain life insurance coverage and to obtain it at favorable rates in the 1970's, 1980's and 1990's when they were younger and in better health than in 2001 when American General terminated their group life insurance coverage.

32.

Plaintiffs were more likely to have been able to obtain life insurance coverage and to obtain

it at favorable rates in 1997 and 1998 when American General was telling them that their group life insurance coverage would remain in effect for their lifetimes than in 2001 when American General terminated their group life insurance coverage.

33.

ERISA requires plan fiduciaries to discharge their duties with respect to a plan "solely in the interests of the participants and beneficiaries...." 29 U.S.C. § 1104(a).

34.

Employers act in a fiduciary capacity with respect to employer-sponsored ERISA plans when they communicate with plan participants and plan beneficiaries about plan benefits.

35.

ERISA plan fiduciaries owe a duty to speak the truth when communicating with plan participants and beneficiaries about their benefits. This duty entails not only a negative duty not to misinform, but also an affirmative duty to inform when the fiduciary knows that silence might be harmful.

36.

Once an ERISA plan participant or beneficiary has requested information from an ERISA plan fiduciary who is aware of the participant or beneficiary's status and situation, the fiduciary has an obligation to convey complete and accurate information material to the participant or beneficiary's circumstance, even if that requires conveying information about which the participant or beneficiary did not specifically inquire.

37.

Independent Life, American General, and their agents acted in a fiduciary capacity when they communicated with Plaintiffs about their group life insurance coverage.

38.

Independent Life, American General, and their agents breached their fiduciary duties to Plaintiffs by telling Plaintiffs that they would receive free, lifetime group life insurance coverage upon retirement and by not telling them that their coverage could be terminated after they retired.

39.

Independent Life, American General, and their agents continued to breach their fiduciary duties to Plaintiffs by failing to correct the mis-impression created by the representations and omissions described in the preceding paragraph until October, 2000, when American General notified Plaintiffs that it was terminating their group life insurance coverage.

40.

American General further breached its fiduciary duty to those Plaintiffs who inquired about their group life insurance coverage after American General began considering terminating such coverage by not telling them that it was considering terminating their coverage and, in some cases, by telling them that their coverage would remain in effect for their lifetime.

41.

American General further breached its fiduciary duty to those Plaintiffs who inquired about their group life insurance coverage after American General decided to terminate such coverage by not informing them that it had decided to terminate their coverage and, in some cases, by telling them that their coverage would remain in effect for their lifetime.

42.

Plaintiffs reasonably relied upon the mis-impression that their group life insurance coverage would, and did, vest upon their retirement which was created by the above-described representations and omissions.  Plaintiffs relied upon this mis-impression by staying with Independent Life or

American General until retirement and by, *inter alia*, not purchasing additional life insurance coverage, cashing-in additional coverage that they had, selecting life-only pensions instead of pensions with survivor benefits, and/or not selling back half of their group life coverage when Independent Life offered to buy it back.

43.

Equity considers that done which ought to be done.

44.

American General is liable to Plaintiffs under ERISA § 502(a)(3), 29 U.S.C. 1132(a)(3) for the harm suffered by Plaintiffs as a result of the breaches of fiduciary duty by Independent Life, American General, and their agents described herein.

**INAPPLICABILITY AND FUTILITY OF EXHAUSTING
THE ADMINISTRATIVE APPEALS PROCESS**

45.

The 1998 SPD issued by American General to Plaintiffs states:

1.      FIDUCIARY RESPONSIBILITY

The people who administer American General's benefit plans are called plan fiduciaries. These people have a duty to operate the plans prudently and in the best interests of all participants and beneficiaries. No one may discriminate against you in any way to prevent you from obtaining a benefit or exercising your rights under ERISA. **You may file suit to enforce these rights**, if necessary....

* * *

4.      CLAIM APPEAL

Participants or beneficiaries who believe they may have been denied any benefit or right provided by one of the company's benefit plans **may file a written claim** with the plan administrator. The plan administrator must provide, within a reasonable period of time, a written statement containing:

•        The specific reason(s) for denial of benefits;

- A specific reference to the plan provision on which the denial is based;
- A description of any additional material or information the plan administrator requires to research your claim; and
- An explanation of the review procedure described below.

Within sixty days after receiving the above statement, **you may request in writing to appear before the plan administrator for a review of your claim**....

46.

The letters that American General mailed to Plaintiffs notifying them that it was terminating their group life coverage did not advise Plaintiffs that they had the right to appeal its termination of their coverage, or advise them how to go about appealing the termination of their coverage. An example of one such letter is attached hereto as exhibit "A".

47.

Plaintiffs reasonably interpreted the SPDs and termination notices they received to not require exhaustion of the administrative appeals process before filing suit.

48.

Retirees who complained to American General about the termination of their coverage were issued letters stating:

American General has provided the Plan to retired former employees of Independent Life & Accident Insurance Company ("ILA") on a purely voluntary basis, but always reserving the right to modify, reduce, or terminate the Plan and/or benefits at any time. American General has repeatedly advised ILA's employees and retirees that *"This plan may ben changed or discontinued at any time at the discretion of the company"* and that *"American General reserves the right to change or discontinue any of its benefit plans at any time."* Notably, ILA (prior to its acquisition by American General) similarly reserved the right to amend or terminate this benefit. Thus, American General lawfully exercised a right that employees and retirees have always known it had. It is well-settled that where an employer has so reserved its rights to terminate an employee benefit, it may exercise them at any time. **Extrinsic evidence, such as incidental correspondence sent to participants describing their current benefit levels, cannot have the effect of negating an employer's right to terminate a benefit if such right is expressly contained in plan documents.**

Any plan beneficiary who believes that his or her rights have been improperly affected has the legal right to file a claim with the Plan Administrator to enforce or clarify his or her rights.  To the extent that your letter was intended to constitute a claim, it is denied.  Under the terms of the Plan, and as required by Section 503 of the Employee Retirement Income Security Act of 1974 ("ERISA"), you **may**, within 60 days after receiving this letter request in writing to appeal before the Plan Administrator for review of your claim....

An example of one such letter is attached hereto as exhibit "B".

49.

Given American General's stated position that "extrinsic evidence ... cannot have the effect of negating an employer's right to terminate a benefit if such right is expressly contained in plan documents," it would have been futile for Plaintiffs to have exhausted the plan's administrative appeals process before filing suit.

50.

Any failure by Plaintiffs to fully exhaust their administrative remedies before filing suit should be excused on the grounds that Plaintiffs did not reasonably believe that they had to exhaust their administrative remedies before filing suit, and on the grounds that exhaustion of the administrative appeals process would have been futile.

WHEREFORE, having stated their Complaint, Plaintiffs pray as follows:

a) That process issue and that American General be served as provided by law;

b) That the Court specifically enforce the promises of free, lifetime group life insurance coverage made to Plaintiffs by Independent Life and American General by ordering American General to reinstate the promised coverage for Plaintiffs who are living and to pay death benefits, including interest, to Plaintiffs who are beneficiaries of plan participants who have died since January 1, 2001, or fashion such other equitable relief as the Court deems appropriate;

c) That Plaintiffs recover their expenses of litigation, including reasonable attorney fees; and

d) That Plaintiffs have such other and further relief that the Court deems just.

Respectfully submitted,

John C. Bell, Jr.
Georgia State Bar No. 048600
Leroy W. Brigham
Georgia State Bar No. 081698
BELL & JAMES
Post Office Box 1547
Augusta, Georgia 30903-1547
(706) 722-2014

Thomas W. Tucker
Georgia State Bar No. 717975
John B. Long
Georgia State Bar No. 457200
TUCKER, EVERITT, LONG,
   BREWTON & LANIER
Post Office Box 2426
Augusta, Georgia  30903
(706) 722-0771

COUNSEL FOR PLAINTIFFS

# AMERICAN
# GENERAL
FINANCIAL GROUP

September 30. 2000

Gerald W Jones
437 Shallowford Circle
Augusta, GA 30907

Dear Gerald W Jones:

As part of American General's retiree welfare benefits package, retirees of Independent
Life and Accident Insurance Company have been provided with group life insurance
coverage. This benefit has been funded completely by the company with no premium
required to be made by the participants.

The company will no longer continue to provide this insurance on a group basis and is
exercising its right to discontinue this benefit. Effective January 1, 2001, in order to
continue coverage of retiree life insurance benefits, it will be necessary for you to convert
to an individual policy and pay the required premiums.

If you are interested in individual coverage, you should complete and return the enclosed
Notice of Life Conversion Privilege so that it is received by United States Life no later
than January 31, 2001. Once this has been received, you will be provided a life
conversion quote and conversion application.

If, however, you are not interested in continuing this coverage through an individual
policy, no action is required on your part and group coverage will terminate
automatically, effective January 1, 2001.

If you have any questions, you may call toll-free (877) 487-4290.

Enclosure

Retiree health and welfare benefits are provided at the sole discretion of American General as
part of its benefits package, and may be changed or discontinued at any time.

American General Life and Accident Insurance Company
American General Center, Nashville TN 37250-0001


EXHIBIT
A

AMERICAN
GENERAL
FINANCIAL GROUP

November 28, 2000

Mr. and Mrs. Gerald W. Jones
437 Shallowford Circle
Augusta, GA 30907

Dear Mr. and Mrs. Jones:

This is to respond to your inquiry concerning the decision of American General Life and Accident Insurance Company ("American General") to terminate the American General Group Life Insurance Plan for Retirees of Independent Life & Accident Insurance Company (the "Plan"). The termination of this ERISA-covered group life insurance benefit is effective January 1, 2001.

This decision was made in large part because this benefit has been provided only to the retirees of a company acquired by American General in 1997, but has not generally been provided to retirees of other American General companies. American General has provided the Plan to retired former employees of Independent Life & Accident Insurance Company ("ILA") on a purely voluntary basis, but always reserving the right to modify, reduce, or terminate the Plan and/or the benefits at any time. American General has repeatedly advised ILA's employees and retirees *that "This plan may be changed or discontinued at any time at the discretion of the company"* and that *"American General reserves the right to change or discontinue any of its benefit plans at any time."* Notably, ILA (prior to its acquisition by American General) similarly reserved the right to amend or terminate this benefit. Thus, American General lawfully exercised a right that employees and retirees have always known it had. It is well settled that where an employer has so reserved its rights to terminate an employee benefit, it may exercise them at any time. Extrinsic evidence, such as incidental correspondence sent to participants describing their current benefit levels, cannot have the effect of negating an employer's right to terminate a benefit if such right is expressly contained in plan documents.

Any plan beneficiary who believes that his or her rights have been improperly affected has the legal right to file a claim with the Plan Administrator to enforce or clarify his or her rights. To the extent your letter was intended to constitute a claim, it is denied. Under the terms of the Plan, and as required by Section 503 of the Employee Retirement Income Security Act of 1974 ("ERISA"), you may, within 60 days after receiving this letter request in writing to appeal



EXHIBIT
B

before the Plan Administrator for review of your claim.  If additional pertinent documents are necessary for the preparation of your appeal, please advise me.  If you have additional information relative to the appeal, it should be submitted to the Plan Administrator with the review request.  The Plan Administrator will consider any written statement or other evidence you provide in support of your claim for benefits. Within 60 days after receiving your request for review (or up to 120 days in the event of special circumstances), the Plan Administrator will complete the review process and provide a final and conclusive written decision.

Sincerely,

*Elizabeth A. Dobbs*

Elizabeth A. Dobbs